RICHARD COOPER *v.* CHARLES S. N. NEWELL.

CHANCERY: INJUNCTION.—The defendant in an action of replevin, who has executed a bond to have the property forthcoming to abide the judgment of the court in that action, is entitled to an injunction, restraining, during the pendency of the replevin suit, the sale of the property under an execution against the plaintiff in replevin, although he does not allege in the bill that the property is his.

APPEAL from the Chancery Court of Jasper county.    Hon. John Watts, chancellor.

The appellee filed his bill in the court below, in which he alleged that on the 23d day of January, 1856, one Elias Newell instituted an action of replevin against him and one D. S. Newell for the recovery of certain slaves in their possession, and among whom was the slave now in controversy; that, according to the practice in such cases, the appellee executed a bond, with security, to have said slaves forthcoming to abide the judgment to be rendered in said suit; and the said slaves were permitted to remain in their possession.    That, afterwards, the appellant recovered a judgment against said Elias Newell, the plaintiff in the action of replevin, and had an execution, emanating therefrom, levied on one of said slaves; and the sheriff was now proceeding to sell the slave so levied on; "and inasmuch as your orator has executed a replevy bond for the return of said negroes to the said Elias Newell, should return thereof be adjudged by the said court, your orator would be greatly damaged by the sale of said negroes, or either of them, under executions emanating from property rendered against said Elias Newell before the final determination of said action of replevin.    And, inasmuch as the right and title to said negroes will be fully determined in the suit aforesaid, it would be putting your orator to great inconvenience and expense to execute bonds for the trial of the rights of said negroes."

The prayer was for an injunction, against the sale of the slave levied on.    The chancellor granted the injunction, and afterwards

overruled Cooper's demurrer to the bill; and from that decree Cooper appealed.

*W. P. Harris*, for appellant.

The bill does not proceed upon the ground, that the complainant being the owner of the property, and entitled to peaceable enjoyment thereof, seeks to recover them in specie; but the whole scope of the bill, is simply to stay the sale until the replevin suit is determined, in order that, in case he shall be required to deliver the property to the plaintiff, he may be able to do so. See Bill, Record pp. 4, 5.

The bill nowhere asserts that complainant is the owner, nor does it claim relief on that ground.

If he is the owner, he has a plain, unembarrassed remedy at law. If Elias Newell is the owner, the seizure and sale of the property for his debts will not prejudice the complainant, because he can make this fact appear in the replevin suit, and escape the perfection of his bond. *Fernday* v. *Selser*, 13 Sm. & M. 698. See the authorities cited by Mr. Potter, in the above case, at page 718. 7 Cow. 278; 11 Pick. 223; 10 Mass. 470; 12 Wend. 589, cited by Judge Sharkey.

The complainant puts the case upon the sole ground, that he may be involved in an involuntary breach of his bond. This cannot occur, if he chooses to make the defence in the trial of the replevin suit.

This case presents a new and improved method of delaying creditors. If the fact, that the property is in litigation, is sufficient ground for injunction against a mere creditor, it is sufficient for any party to the litigation. The same ground relied on in this bill, would be available to the complainant, if he was the judgment debtor; and creditors, by this means, might be delayed and baffled.

If the complainant believes he has title to the property, he can give bond, and try the right at law. The trouble of giving such a bond is not greater than the trouble of an injunction bond, and a suit in equity; and it should be borne in mind that this claimant bond, subserves all the purposes of a bill to recover the specific slaves, and is a simple and perfect remedy.

But clearly, according to well-settled doctrines, the bill cannot stand on the ground that the complainant is the owner of the property levied on.

The general rule is, that he cannot come into equity to prevent a rule. *Poage* v. *Bell*, 3 Rand. 586; Ib. 25; *Kendrick* v. *Arnold*, 4 Bibb. 325; *Watkins* v. *Logan*, 3 Monroe, 20.

There is an exception to the general rule, in case of slaves; but the party must assert and show a clear title, and put his case upon the ground that he desires to retain the specific property. *Saunders* v. *Woods*, 5 Yerger, 142; *Bryan* v. *Earthman*, 6 Ib. 24.

In this case, the complainant does not assert title in himself, nor does he put the case on that ground.

We have seen, that he can sustain no loss, if the property belongs to Elias Newell.

The mere existence of litigation respecting property has never been held a ground to require a sale under execution. It would be quite as well to say that there could be no sale, where it was in dispute, or where doubt exists.

The only ground on which the complainant could have asked relief, is one on which he has not chosen to place it. The bill shows that the complainant has purposely evaded even a claim of title.

*George L. Potter*, for appellee.

The case shows that the slaves levied on were in custody of the law. They had been seized under legal process, and complainant become special bailee under the statute, bound in a heavy penalty to have them forthcoming to answer to the court. The purpose of this bill is to prevent a seizure, under another process of law, and a sale to the manifest injury of complainant, until the matters of the former suit are decided, and complainant released from his bond.

Elias Newell has seized the slaves as his, under process, and now Cooper seizes them, under process, as the property of Elias. The Chancery Court, acting under the statute, has compelled complainant to give heavy bond to have them forthcoming to answer the claim of Elias, and it should not permit any one claiming under

Elias to interfere with the possession, until that controversy is settled.

Again, the bill is proper, to prevent a multiplicity of suits. Complainant should not be put to the vexation and expense of two suits, to test the question whether these slaves belong to him or Elias. If Elias has no claim, then Cooper has none; and the whole matter will be settled in the replevin suit.

HANDY, J., delivered the opinion of the court.

This was a bill in chancery, filed by the appellee under the following circumstances:—

A writ of replevin had been sued out by one Elias Newell, against the appellee and D. S. Newell, for certain slaves in their possession. The writ was executed, and the appellee and D. S. Newell retained possession of the slaves, by executing a bond, according to the sta-. tute, conditioned to deliver them according to the judgment of the court, in case the suit should be decided against them. Pending this suit, the appellant recovered a judgment for the sum of $423 against Elias Newell, the plaintiff in the action of replevin, and execution issued thereon, which was levied upon one of the slaves involved in that suit, as the property of Elias Newell.

The bill states that the appellee would be greatly damaged by the sale of the slave levied upon, before the determination of the action of replevin, and prays an injunction restraining the sale under the execution, during the pendency of the action of replevin.

The appellant filed a demurrer to this bill, which was overruled, and from that decree this appeal is taken.

It is objected that the bill is insufficient, because it does not allege that the complainant is the owner of the property.

But it shows that he was in lawful possession of the slaves, and was bound to have them forthcoming, in the event that the action of replevin should be decided against him. In this condition of the slaves, they must be considered as *in custody of the law*, and not subject to be taken from the complainant's possession, under an execution against the plaintiff in the action of replevin. Such an interference with the course of the law, would be productive of confusion, and is not to be indulged. But, in addition to this, it deprived him of the power to keep the property, and to have it

ready to be delivered, according to the exigency of the action in replevin, as he was bound to do by his bond. If the result of that action should be that he was entitled to the slaves, and that they were not the property of the plaintiff in the action, he had a clear right to have the sale of them by the execution enjoined; and if they should be adjudged in the action to be the property of the plaintiff, he was entitled to protection in his possession, in order that he might perform his legal obligation to have them forthcoming to answer the judgment, and might not be placed in the hazardous condition of being compelled to suffer a breach of his bond.

It is, however, said, that the complainant's remedy was ample at law, by setting up his claim for the trial of the right of property, under the statute. But such a proceeding is liable to serious objections, under the circumstances of the case. It would have involved the same question upon which the action of replevin depended, to wit, whether the slaves were the property of the plaintiff in replevin, as whose property they were levied upon under the execution, thus creating two suits, depending upon the same question, which is against the policy of the law; and yet, if the claimant prevailed in the trial of the right of property, the judgment would not settle the right of the defendants in the action of replevin. And if the claim of property should be decided against him, the slaves would be taken from his possession, and he be subjected to the hazard arising from the breach of his bond.

These difficulties do not exist with reference to the remedy by injunction. The plaintiff in execution is restrained from proceeding against the property, until the decision of the question of title in the replevin suit. If it be decided in favor of the defendant in the action, there is an end of the matter, as to the right of the plaintiff in execution to subject it to his debt; and if it be decided to be the property of the plaintiff in replevin, the plaintiff in execution may proceed to subject it; and thus all embarrassment and damage may be obviated.

But upon another ground the bill should be maintained. The complainant, having possession of the slaves under a claim of title and ownership, which must be presumed from the facts stated in the bill, was entitled to protection by injunction, against the sale of them, as his property, in which light they are to be regarded,

according to the allegations of this bill. And the jurisdiction of equity in such cases is fully settled. The injunction, therefore, is not only a protection to the rights of the complainant, but also of those of the plaintiff in the action of replevin. For it prevents the sale of the slaves, which, if sold in the state of doubt as to the title, arising from the claims of the parties to that suit, could scarcely fail to be sacrificed, and thus cause an injury to the plaintiff, if he proved to be the owner, by the sacrifice of his property, or great damage to the complainant, if they should be adjudged to belong to him.

We therefore consider the case a clear one for relief by injunction, and that the decree overruling the demurrer is correct.

Decree affirmed.